Mr. Chief Justice ShaRKey
delivered the opinion of the court. ■
On the 23d of April, 1843, Herbert sued out an attachment on an account against William Gibbons, which was levied on a slave named Isaac. Pending that suit, the complainant filed this bill, and prayed an injunction to restrain the sale of the negro, on the ground that he did not belong to William Gibbons, but was the property of John Gibbons's estate, on which the plaintiff was administrator de bonis non, William Gibbons having been originally appointed administrator. The respondent answered, denying the allegations of the bill, and charging that if the negro had been conveyed to John by William Gibbons, such conveyance was fraudulent. The .answer is also made a cross-bill, by which complainant seeks to subject William Gibbons’s distributive share of the estate of John Gibbons to the payment of his debt, if it should turn out that the sale was' valid.
Passing by tlje question of jurisdiction which was raised, the case must depend on the admissibility of William Gibbons as a witness. He proves that he sold the negro to his brother in 1840 for a full consideration, and makes the bill of sale an exhibit to his deposition. But it is contended that he had such an interest in the suit as should exclude his testimony, but this objection seems not to be well founded. He was defendant in the attachment, it is true, but not for that reason liable for costs if Herbert should succeed. In that case the costs would be payable out of the attached property. Gibbons was not personally liable. ■ In the case of Whipple v. Lansing, 3 Johns. Ch. Rep. 612, it was decided, that a defendant charged with fraudulently colluding with his co-defendant in the transaction sought to be impeached, cannot be a witness, especially when he has an interest in the • cause. And in Pope v. Andrews, 1 S. & M. Ch. Rep. 135, it was held, that a co-defendant so charged could not be a witness *550 when he was liable for costs. These cases do not exclude Gibbons. He is not a party to the suit, nor is he liable for the costs. The evidence on the other side is very strong, to be sure, though less certain and conclusive. It consists mostly of statements made by John Gibbons in a conversation with William Nichols. One of the witnesses says, that John Gibbons said that the negro had been conveyed to him to avoid a certain debt of William Gibbons; the other witness says, that John Gibbons stated that the house and lot had been conveyed for that purpose, but that he did not remember any particular reference to the negro. A third witness heard a conversation with William Nichols, probably the same above referred to, in which John Gibbons stated that his brother had made over all his property to him to avoid a certain debt, but only remembers to have heard a house and lot mentioned. In the absence of positive proof to the contrary, this evidence might be regarded as sufficient to justify a belief that the sale was fraudulent; but we have the positive testimony of William Gibbons, and the positive statement of the complainant in his answer to the cross-bill, which calls for a discovery, that the sale was bona fide. We are not at liberty to reject both, ánd adopt evidence less certain and satisfactory.
The cross-bill cannot be sustained. It prays, if the sale should be found valid, that William Gibbons’s distributive share nmy be subjected to the payment of the debt, of which there is no proof. But the debt has not been reduced to judgment, and the estate, moreover, is said to be insolvent.
Decree reversed, and injunction made perpetual as to the negro mentioned in the bill.